UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WESLIE MARTIN, | Case No. 3:23-cv-00423-MMD-CLB |
| Plaintiff, | ORDER |
| v. | |
| UNDERWOOD, *et al.*, | |
| Defendants. | |

**I.      SUMMARY**

This action began with a *pro se* civil-rights complaint under 42 U.S.C. § 1983 submitted by state prisoner Weslie Martin together with an application to proceed *in forma pauperis*. (ECF Nos. 1-1, 1.) Weslie initiated other civil-rights actions while he was incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), including the action styled *Martin v. State of Nevada*, 3:21-cv-00365-RCJ-CSD ("*Martin I*"). Before the Court was able to screen the Complaint in this action, Interested Party NDOC filed in *Martin I* notice under Federal Rule of Civil Procedure ("FRCP") 25(a)(1) that Weslie had passed away. *Martin I*, ECF No. 15. So informed, on December 6, 2023, the Court ordered that this action would be dismissed unless a motion to substitute under FRCP 25 was filed on or before March 5, 2024. (ECF No. 5.) No motion to substitute was filed, and the Court dismissed and closed this action on March 11, 2024. (ECF Nos. 7, 8.)

Two months later, Denzel Martin filed motions to reopen this action and be substituted in Plaintiff Weslie's place, arguing that he is Weslie's biological brother, and no one received notice of the Court's order in this action or the suggestion of death that the NDOC filed in *Martin I*. (ECF Nos. 10, 11.) The Court grants Denzel's motion to reopen this action and thus vacates its dismissal order and judgment. But Denzel has not demonstrated that he has standing to bring Weslie's constitutional claims under Nevada's

survivorship law. Denzel's motion to substitute is therefore denied without prejudice, and the Court reopens and extends by 90 days the deadline to file a properly supported motion for substitution under FRCP 25.

## II.      MOTION TO REOPEN CASE (ECF NO. 11)

Denzel moves the Court to reopen this case, arguing that neither he nor Weslie's other relatives knew about this action before the March 5, 2024 deadline to move for substitution expired. (ECF No. 11). The Court construes the motion as seeking to set aside the dismissal order and judgment under FRCP 60(b) on the grounds of surprise and excusable neglect. FRCP 60 authorizes district courts to "relieve a party or its legal representative from a final judgment, order, or proceeding" because of "mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1). Motions under FRCP 60(b) "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

"Neglect" encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Invest. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 308, 388 (1993) (examining excusable neglect in the bankruptcy context). "[T]he determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223-24 (9th Cir. 2000) (citing *Pioneer*, 507 U.S. at 395; and *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381-82 (9th Cir. 1997) (applying *Pioneer* factors to whether neglect is "excusable under Rule 60(b)(1)")). The Ninth Circuit has instructed that regardless of an action's particular circumstances, "it will always be a better practice for the district court to touch upon and analyze at least all four of the explicit *Pioneer-Briones* factors[.]" *Lemoge v. United States*, 587 F.3d 1188, 1194 (9th Cir. 2009). The Court now analyzes the *Pioneer-Briones* factors.

### A.   Prejudice to defendants

Prejudice results when a defendant's ability to pursue his defenses is hindered. *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). The delay must cause tangible harm like the loss of evidence, increased difficulties performing discovery, or greater opportunity for fraud or collusion." *See TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). The loss of a quick victory does not constitute prejudice. *Bateman*, 231 F.3d at 1225.

The Complaint contends that Weslie's rights under the First and Eighth Amendments were violated when caseworker Mullet retaliated against him for complaining about conditions, caseworkers Mullet and Underwood tried altering his housing assignment to expose him to violent inmates associated with the gang called the Nevada Gangsters, and caseworker Roman spread "lies and rumors" about him having a Prison Rape Elimination Act issue or "talking crazy to someone on the tier." (ECF No. 1-1.) It appears that Weslie's grievance, classification, and kite record are relevant to these claims, and relevant witnesses include caseworkers, classification officials, and grievance responders. Based on this record, the Court does not perceive that any evidence has yet been lost or that the defense could encounter increased difficulties performing discovery in this action because of the delay. Nor does there appear to be an increased risk of fraud or collusion. This factor weighs in favor of finding that the delay was caused by surprise and excusable neglect.

### B.   Length of and reason for delay

Denzel argues that he and Weslie's other family members were not aware that Weslie had pending legal proceedings until the Ninth Circuit ordered the NDOC to serve Weslie's next of kin with notice of the suggestion of death in the appeal styled *Martin v. Lona*, Appeal No. 23-15653 ("*Martin Appeal*"). (ECF No. 11 at 3.) It appears that the NDOC mailed the required notice to Denzel on February 15, 2024. *Martin Appeal*, ECF No. 12. About two months later, Denzel and Weslie's other family members met with an

1   attorney and first learned about Weslie's other civil-rights actions, including this action

2   and *Martin I*. (ECF No. 11 at 3.) Denzel highlights that Weslie's family members had not

3   received prior notice of *Martin I* because the NDOC did not serve anyone other than the

4   decedent with the suggestion of death it filed in that action. *See Martin I*, ECF No. 15.

5   Similarly, but for different reasons,[1] notice of the order setting the deadline for substitution

6   in this action was served only on the decedent.

7        It appears that Denzel waited about 10 days after learning from an attorney that

8   Weslie had filed this and other civil-rights actions before moving to reopen this action.

9   About two and a half months separate the NDOC's notice to Denzel of the suggestion of

10  death in the *Martin Appeal* and Denzel's motion to reopen this action. The Court finds that

11  Denzel's neglect has not significantly delayed these proceedings and "[h]is errors resulted

12  from negligence and carelessness, not from deviousness or willfulness." *See Bateman*,

13  231 F.3d at 1225. These factors also weigh in favor of finding that the delay was caused

14  by surprise and excusable neglect.

15       **C.    Bad faith**

16       The last factor requires the Court to determine if Denzel acted in bad faith when

17  he failed to move for substitution by the Court's deadline. Giving Denzel the benefit of the

18  doubt, he was not aware of Weslie's civil-rights actions until he received notice in *Martin*

19  *Appeal*, he gathered Weslie's other family members and sought the advice of counsel,

20  who also informed them about this action and *Martin I*. Ten days later, Denzel then moved

21  to reopen this action and to be substituted in Weslie's place. The Court does not view the

22  record as showing that Denzel acted in bad faith here. This factor thus favors finding that

23  the delay was the product of surprise and excusable neglect.

24       Having thoroughly considered these *Pioneer-Briones* factors, the Court finds that

25  they weigh in favor of reopening this action and setting aside the dismissal order and

26  judgment on grounds that the delay was the product of surprise and excusable neglect.

27  _____

28       [1]The Court had not screened the Complaint when it set the deadline for Weslie's successor or representative to move for substitution under FRCP 25, so the decedent was—and remains—the only party who has appeared in this action.

1   Denzel's motion to reopen is therefore granted.

2   **III.   MOTION TO SUBSTITUTE UNDER FRCP 25 (ECF NO. 10)**

3        Denzel moves the Court to be substituted for Plaintiff Weslie Martin, arguing that

4   he is Weslie's biological brother. (ECF No. 10.) If a party dies during litigation and their

5   "claim is not extinguished, the court may order substitution of the proper party." Fed. R.

6   Civ. P. 25(a)(1). Any party or the decedent's successor or representative may move for

7   substitution. *Id.* If a motion to substitute "is not made within 90 days after service of a

8   statement noting the death, the action by or against the decedent must be dismissed." *Id.*

9   Thus, to prevail on a motion for substitution under Rule 25(a)(1), the movant must

10  demonstrate that: (1) the motion is timely; (2) the decedent's claim has not been

11  extinguished; and (3) the proposed person to be substituted is "the proper party."

12              **1.    Denzel's motion is timely.**

13       The Ninth Circuit held in *Barlow v. Ground* that FRCP 25(a)(1) "requires two

14  affirmative steps in order to trigger the running of the 90-day period." 39 F.3d 231, 233

15  (9th Cir. 1994) (cleaned up). "First, a party must formally suggest the death of the party

16  upon the record." *Id.* "Second, the suggesting party must serve other parties and nonparty

17  successors or representatives of the deceased with a suggestion of death in the same

18  manner as required for service of the motion to substitute." *Id.* Denzel argues that his

19  motion is timely because no party filed a formal suggestion of death in this action and the

20  NDOC did not serve the suggestion of death that it filed in *Martin I* on Weslie's nonparty

21  successors or representatives. Moreover, Denzel did not receive the suggestion of death

22  that the Ninth Circuit ordered the NDOC to serve in the *Martin Appeal* until on or about

23  February 15, 2024, and he filed the instant motion for substitution less than three months

24  later. The Court finds that Denzel's motion for substitution is timely.

25              **2.    Weslie's § 1983 claims have not been extinguished, but Denzel
26                     has not shown that he is the "proper party" to be substituted.**

27       "A claim under 42 U.S.C. § 1983 survives the decedent if the claim accrued before

28  the decedent's death, and if state law authorizes a survival action." *Tatum v. City and*

*Cnty. of San Francisco*, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006) (citing *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998); 42 U.S.C. § 1988(a)); *accord Robertson v. Wegmann*, 436 U.S. 584 (1978). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action[,] and that the plaintiff meets that state's requirements for bringing a survival action." *See Moreland*, 159 F.3d at 369. Nevada law provides that "no cause of action is lost by reason of the death of any person, but may be maintained by or against the person's executor or administrator." NRS § 41.100(1).[2] "'Executor' means a person nominated in a will and appointed by the court to execute the provisions of the will and administer the estate of the decedent." NRS § 132.130. While "'[a]dministrator' means a person not designated in a will who is appointed by the court to administer an estate." NRS § 132.040.

As the Nevada Supreme Court explained in *Gonor v. Dale*, "the proper party who may take the place of the deceased party within the meaning of NRCP 25(a)(1)"— Nevada's analog to FRCP 25(a)(1)—"includes either an individual named in the will of the deceased party and appointed by the court to administer the estate or an individual appointed by the court to do the same." 432 P.3d 723, 726 (Nev. 2018). In the case of a party who died intestate—without a will—"the proper party would be a special administrator appointed by the court." *Id.* Matters concerning the will and estates of deceased persons in Nevada are governed by NRS Title 12. Federal courts do not have jurisdiction over matters that involve the administration of an estate or probate of a will, including the appointment of personal representatives, executors, or administrators. *See in re Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006) (holding that "the probate

---

[2]In contrast to survivorship claims, NRS 41.085 authorizes the decedent's heirs and personal representatives to pursue claims for damages when the decedent's death was allegedly caused by the wrongful act or neglect of another. And *Moreland* explains that a decedent's survivors—like parents and offspring—may raise claims based on their Fourteenth Amendment substantive due-process right to familial association. 159 F.3d at 371-72. But no such claims are being pursued in this action. As Denzel explains in his motion, neither he nor Weslie's other family members have yet to obtain "specific details surrounding [Weslie's] death." (ECF No. 10 at 2.)

1  exception reserves to state probate courts the probate or annulment of a will and the

2  administration of a decedent's estate; it also precludes federal courts from endeavoring

3  to dispose of property that is in the custody of a state probate court").

4  The upshot of this analysis is that mere kinship is not enough under Nevada law

5  to qualify a person to pursue a decedent's constitutional claims on a survivorship basis.

6  Rather, only persons who have been duly appointed by the state court as executors or

7  administrators of the decedent's estate may bring those claims. Denzel, who merely

8  argues that he is Weslie's biological brother, has not demonstrated that he has standing

9  to bring Weslie's constitutional claims under Nevada's survivorship law. For example,

10  Denzel provides no evidence that a Nevada state court has appointed him as the executor

11  or administrator of Weslie's estate. Denzel's motion for substitution is therefore denied

12  without prejudice, and the Court reopens and extends by 90 days the deadline for filing a

13  fully supported motion for substitution under FRCP 25.

14  **IV.    CONCLUSION**

15  It is therefore ordered that the motion to reopen case (ECF No. 11) is granted.

16  It is further ordered that the order dismissing case (ECF No. 7) and judgment (ECF

17  No. 8) are vacated.

18  It is further ordered that the motion for substitution under FRCP 25 (ECF No. 10)

19  is denied without prejudice.

20  It is further ordered that the deadline to file a motion for substitution under FRCP

21  25 is reopened and extended until 90 days after entry of this order.

22  It is further ordered that this action will be dismissed in 90 days unless a motion to

23  extend that deadline, or to substitute under FRCP 25, is filed with the Court.

24  The Clerk of Court is directed to send Denzel Martin a courtesy copy of this order

25  at the address provided in his motions: 1520 Ruby Cliffs Lane, #104, Las Vegas, Nevada

26  89144.

27  ///

28  ///

1    DATED THIS 8th Day of May 2024.

2

3                                                    _____
                                                     MIRANDA M. DU
4                                                    CHIEF UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28